UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAMID AL-MOHAMMED,

    Plaintiff,

v.                                                                                    Case No. 07-10732
                                                                               Honorable Patrick J. Duggan

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICE,[1]

    Defendant.
_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on July 9, 2007.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                     U.S. DISTRICT COURT JUDGE

Plaintiff Hamid Al-Mohammed commenced this action in response to the United States Citizenship and Immigration Service's delay in processing his naturalization application. Presently before the Court is the agency's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, to remand this matter to the United States Citizenship and Immigration

---

[1] Although Plaintiff, in his *pro se* complaint, names the Immigration and Naturalization Service ("INS") as the defendant, the naturalization function previously handled by the INS is now handled by the United States Citizenship and Immigration Service ("CIS"). Thus the Court *sua sponte* amends the case caption to reflect the proper defendant.

1

Service ("CIS") for a determination on Plaintiff's naturalization application. CIS' motion has been fully briefed. On June 29, 2007, this Court issued a notice informing the parties that it is dispensing with oral argument with respect to the motion pursuant to Eastern District of Michigan Local Rule 7.1(e)(2). For the following reasons, the Court grants in part and denies in part the motion.

## I. Factual and Procedural Background

Plaintiff, a permanent resident of the United States, filed an application for naturalization on March 12, 2002. (Def.'s Mot. Ex. A ¶ 5.) On March 20, 2003, a CIS officer interviewed Plaintiff. (*Id.* ¶ 6.) Plaintiff subsequently was informed that, although he passed the English basic proficiency and United States history and government tests, a decision on his application could not be made until the FBI completed a security name check. (Pl.'s Resp. Ex. A; Pl.'s Compl. at 1-3.) Although CIS submitted a name check request to the FBI on or around May 28, 2003, CIS, as of May 3, 2007, has not received any results from the FBI. (Def.'s Mot. Ex. A ¶ 9.)

In response to CIS' continued delay in making a decision on his naturalization application, Plaintiff initiated this lawsuit on February, 20, 2007. On May 7, 2007, CIS filed the pending motion.

## II. CIS' Motion to Dismiss

CIS seeks dismissal of Plaintiff's lawsuit, arguing that the Court lacks subject matter jurisdiction to resolve Plaintiff's claims. Specifically, CIS argues that the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1447(b), confers subject matter

jurisdiction upon a district court to adjudicate a naturalization application only after the FBI completes its background check of the applicant. Section 1447(b) provides:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the *examination* is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b) (emphasis added). The parties dispute the meaning of the term "examination" as it is used in Section 1447(b) and, therefore, at what point the 120-day period referenced in the section begins. CIS argues that "examination" refers to the investigative process as a whole, including the FBI's security check. Thus according to CIS, the 120-day period does not begin to run until the FBI completes this check. Plaintiff responds that the term refers to the initial interview of an applicant, which occurred in this case on March, 20, 2003– well over 120 days before this lawsuit was initiated.

CIS cites several decisions in which courts have held that an "examination" is not completed, and the 120-day period in Section 1447(b) is not triggered, until sometime after the FBI completes its background check. *See, e.g., Danilov v. Aguirre*, 370 F. Supp. 2d 441, 443-44 (E.D. Va. 2005) (holding that "an examination is not a single event, but instead is essentially a *process* the agency follows to gather information concerning the applicant"); *Martinez v. Gonzales*, 463 F. Supp. 2d 569 (E.D. Va. 2006); *Damra v.*

3

*Chertoff*, No. 05-0929, 2006 WL 1786246 (N.D. Ohio June 23, 2006) (unpublished opinion); *El-Kassemi v. DHS*, No. 06-1010, 2006 WL 2938819 (D.N.J. Oct. 13, 2006) (unpublished opinion); *Walji v. Gonzales*, No. 06-1163 (S.D. Tex. Oct. 6, 2006) (unpublished opinion) (Def.'s Mot. Ex. D).[2]

Nonetheless, the majority of courts, including this Court recently in *Al Saleh v. USCIS*, No. 06-13372, 2007 WL 925693 (E.D. Mich. Mar. 28, 2007) (Pl.'s Resp. Ex. E), have concluded that the term "examination" in Section 1447(b) refers to the agency's initial interview of the applicant. *See, e.g., Khelifa v. Chertoff*, 433 F. Supp. 2d 836 (E.D. Mich. 2006) (cases cited therein); *El-Daour v. Chertoff*, 417 F. Supp. 2d 679 (W.D. Pa. 2005) (cases cited therein); *Zhang v. Chertoff*, No. 05-72121, 2006 WL 4045600 (E.D. Mich. Feb.1, 2006) (unpublished opinion) (Def.'s Mot. Ex. C); *Mahmood v. Jenifer*, No. 05-40154, 2005 WL 5179153 (E.D. Mich. Nov. 30, 2005) (unpublished opinion) (Def.'s Mot. Ex. C)*; Saidi v. Jenifer*, No. 05-71832, 2005 WL 5179147 (E.D. Mich. Dec. 23, 2005) (unpublished opinion) (Def.'s Mot. Ex. C). These courts, including this Court in *Al-Saleh*, reject CIS' interpretation for several reasons.

---

[2]CIS also contends that its interpretation of the statute is subject to *Chevron* deference and, therefore, pursuant to this highly deferential standard, the Court should defer to its interpretation of "examination." *See Chevron U.S.A., Inc., v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 104 S. Ct. 2778 (1984). Under *Chevron*, courts must "defer to an agency's reasonable interpretation of a statute it administer unless 'the intent of Congress is clear.'" *Hamama v. INS*, 78 F.3d 233, 239 (6th Cir. 1996) (quoting *Chevron*, 467 U.S. at 842, 104 S. Ct. at 2781). For the reasons set forth below, this Court, like the majority of district courts, concludes that the term "examination" in Section 1447(b) clearly refers to the applicant interview. As such, CIS' interpretation is not entitled to *Chevron* deference. *See* discussion *infra*.

First, Section 1447(b) confers jurisdiction on the district court if the agency fails to make a determination "before the end of the 120-day period after the *date* on which the examination is *conducted*." 8 U.S.C. § 1447(b) (emphasis added). This language implies "that the examination occurs on a particular, identifiable, date." *El-Daour*, 417 F. Supp. 2d at 681. Because a "'process' does not occur on one particular identifiable date," the "examination" referred to in the statute is not a "process," as CIS argues. *Id.* Second, the preceding section of the INA, 8 U.S.C. § 1446, indicates that the investigative process is separate from the examination. *Daami v. Gonzales*, No. 05-3667, 2006 WL 1457862, at *5 (D.N.J. May 22, 2006) (unpublished opinion).

Third, CIS' regulations contemplate a distinction between the examination and the investigation and reflect the agency's interpretation that the 120-day period in Section 1447(b) begins to run from the date of the initial examination. *Khelifa*, 433 F. Supp. 2d at 841. For example, 8 C.F.R. § 335.3(a) states in part: "A decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under § 335.2." As well, 8 C.F.R. § 335.2 specifically requires CIS to conduct the initial examination *only after* the FBI completes its criminal background check of the applicant. 8 C.F.R. § 335.2(b). As one district court has reasoned:

> By referring separately to the FBI background check and the "initial examination," and mandating that the former must be completed before the latter will be conducted, this provision plainly contemplates that the background check is independent from, as opposed to a part of, the examination

5

> that is described in this agency regulation. This provision–
> like the other portions of § 335.2 . . .– is incompatible with
> any notion of an examination as a process that encompasses a
> criminal background investigation.

*Khelifa*, 433 F. Supp. 2d at 841. Lastly, in a recent court appearance, CIS apparently conceded that the 120-day period runs from the date that the agency conducts its initial interview of an applicant. *Al-Ghanem v. Gonzales*, No. 06-320, 2007 WL 446047, at *10 n. 13 (D. Utah Feb. 7, 2007) (Pl.'s Resp. Ex. B ).

For the above reasons, this Court concludes that the initial interview of the naturalization applicant triggers the 120-day period set forth in Section 1447(b). In this case, Plaintiff's initial interview occurred on March 20, 2003, more than 120-days before he filed his complaint. Accordingly, the Court holds that it has subject matter jurisdiction to adjudicate his claims.

## III.   CIS' Motion to Remand

In almost every case cited previously in which the district court exercised subject matter jurisdiction over the naturalization applicant's lawsuit, the court nevertheless declined to decide the application in the first instance, choosing instead to remand the matter to CIS for prompt resolution. *See, e.g., Khelifa*, 433 F. Supp. 2d at 844-45; *Osowa v. Gonzales*, No. 06-15602 (E.D. Mich. Apr. 5, 2007) (Def.'s Mot. Ex. E); *Issa v. Gonzales*, No. 06-15683 (E.D. Mich. Apr. 27, 2007) (Def.'s Mot. Ex. E.) One district court provided the following reasoning for declining to render the initial adjudication of the plaintiff's naturalization application:

> "Generally speaking, a court . . . should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *INS v. Ventura*, 537 U.S. 12, 16 (2002). . . . [T]he executive branch is generally given great deference in immigration matters. More specifically, a district court, like the USCIS, is not in a position to decide an application for naturalization until the FBI completes the required criminal background investigations. A district court is not equipped to conduct such an investigation to determine if an applicant presents any risk to national security or public safety. *El-Daour*, 417 F. Supp. 2d at 684. To conduct a hearing without the completion of a background check "would contravene Congress' intent that an FBI background is to be completed prior to the adjudication of every naturalization application." *Essa v. U.S. Citizenship & Immigration Service*, No. 05-1449, 2005 U.S. Dist. LEXIS 38803, at *8 (D. Minn. Dec. 14, 2005).

*Shalabi v. Gonzales*, No. 06-866, 2006 WL 3032413, at *4 (E.D. Mo. Oct. 23, 2006) (unpublished opinion). This Court agrees that it lacks the necessary expertise and information to make the initial assessment as to whether Plaintiff meets all of the various criteria for naturalization.[3]

CIS argues that if the Court remands, it should do so without setting a date certain for a determination on Plaintiff's application. CIS contends that court-imposed deadlines lead to a rushed and incomplete background check and adjudication. Further, CIS maintains that a time-specific deadline will simply lengthen the process for other

---

[3]Plaintiff fears that CIS will retaliate against him for filing this lawsuit when it adjudicates his naturalization application on remand. He therefore urges the Court to evaluate his petition in the first instance. Plaintiff fails to cite any instances of past retaliation by CIS or any other reason for this Court to believe that CIS will retaliate against an applicant for pursuing his rights under Section 1447(b). Therefore the Court concludes that Plaintiff's unfounded fears are not a basis for denying CIS' remand request.

7

applicants. (Def.'s Reply Br. at 3) (citing *In re Barr Laboratories, Inc.,* 930 F. 2d 72, 76 (D.C. Cir. 1991)). Plaintiff contends that in light of the already lengthy delay in his case– over four years since his interview– and the fact that CIS has rescinded a previous policy to request expedited security checks from the FBI for cases in which lawsuits have been filed, it is necessary for the Court to set a specific deadline. This Court agrees with Plaintiff. Accordingly, the Court remands Plaintiff's naturalization application to CIS to make a decision on the application. The Court directs CIS to render its decision within 120 days of the date of this Opinion and Order.

Accordingly,

**IT IS ORDERED,** that the case caption is amended to identify CIS as the proper defendant;

**IT IS FURTHER ORDERED**, CIS' motion to dismiss is **DENIED;**

**IT IS FURTHER ORDERED,** that CIS' motion to remand is **GRANTED** and

the Court remands this matter to CIS to make a decision on Plaintiff's naturalization application within 120 days of the date of this Opinion and Order.

                                               s/PATRICK J. DUGGAN
                                               UNITED STATES DISTRICT JUDGE

Copies to:
George P. Mann, Esq.
AUSA Susan K. DeClercq